UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

ROBERT JAMES COLVIN, JR.,

          Petitioner,

        vs.

DAVID ROCK,[1] Superintendent, Great
Meadow Correctional Facility,

          Respondent.

No. 9:06-cv-00922-JKS

MEMORANDUM DECISION

Petitioner Robert James Colvin, Jr., a state prisoner appearing *pro se*, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Colvin is currently in the custody of the New York Department of Correctional Services incarcerated at the Great Meadow Correctional Facility. Respondent has answered and Colvin has filed his traverse.

## I. BACKGROUND/PRIOR PROCEEDINGS

In May 2002 Colvin was convicted in the Oneida County Supreme Court after a trial by jury of murder in the second degree (N.Y. Pen. Law § 125.25(1)). Colvin was sentenced to an indeterminate term in prison of 25 years to life. Colvin timely appealed his conviction to the Appellate Division, Fourth Department, which affirmed his conviction in a reasoned decision, and the New York Court of Appeals summarily denied leave to appeal without opinion or citation to authority on September 20, 2005.[2]

Colvin timely filed his petition for relief in this Court on July 31, 2006, and his amended petition on September 21, 2006.

---

[1] David Rock, Superintendent, Great Meadow Correctional Facility is substituted for Gary Greene, Superintendent, Great Meadow Correctional Facility. Fed. R. Civ. P. 25(d).

[2] *People v. Colvin*, 796 N.Y.S.2d 283 (N.Y. App. Div.), *lv. denied*, 837 N.E.2d 740 (N.Y. 2005).

### III.  ISSUES RAISED/DEFENSES

In his petition Colvin has raised two issues:  (1) Ineffective assistance of trial counsel and (2) ineffective assistance of appellate counsel.

Respondent contends that Colvin has failed to exhaust his state court remedies as to both claims and that the first claim is procedurally barred.

### III.  STANDARD OF REVIEW

Because the petition was filed after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  Consequently, this Court cannot grant relief unless the decision of the  state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[3]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[4]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[5]  When a claim falls under the "unreasonable application" prong, a state court's application of the Supreme Court precedent must be "objectively unreasonable," "not just incorrect or erroneous."[6]  The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing the state court determination was incorrect.[7]  Finally, in a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of

---

[3] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000); *see Lockyer v. Andrade,* 538 U.S. 63, 70-73 (2003) (explaining this standard).

[4] *Williams*, 529 U.S. at 412.

[5] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 128 S. Ct. 743, 746-47 (2008) (per curiam).

[6] *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003).

[7] *Schriro v. Landrigan*, 550 U.S. 465, ___, 127 S. Ct. 1933, 1939 (2007).

constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the jury's verdict.[8]

In applying this standard, this Court reviews the last reasoned decision by the state court.[9] In addition, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[10]  Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues *de novo* on the record before it.[11]

## IV.  DISCUSSION

As discussed further below, Colvin's claims are unexhausted in their entirety and his first ground procedurally barred.  In that case, this Court may follow one of three procedures.  It may dismiss the entire petition, without prejudice;[12] dismiss the procedurally barred claim and stay and hold in abeyance the unexhausted claim pending exhaustion in the state courts;[13] or it may dismiss the procedurally barred claim and proceed to deny the unexhausted claim on the merits.[14] The Court, having reviewed the petition on the merits has elected in the interests of judicial efficiency to exercise the third option, dismiss the procedurally barred claim and deny the unexhausted claim on the merits.

Ground 1:  Ineffective Assistance of Trial Counsel.

Colvin contends that trial counsel was ineffective in failing to: (1) request the specific reasons for the police making an identification request in his suppression motion; (2) make a

---

[8] *Fry v. Pliler*, 551 U.S. 112, ___, 127 S. Ct. 2321, 2328 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

[9] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir. 2000).

[10] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[11] *See Spears v. Greiner*, 459 F.3d 200, 203-04 (2d Cir. 2006).

[12] *See Rose v. Lundy*, 455 U.S. 509, 522 (1982).

[13] *See Rhines v. Weber*, 544 U.S. 269, 277 (2005).

[14] 28 U.S.C. § 2254(d).

proper investigation of the crime scene; and (3) object to empaneling a juror who knew the district attorney.  Colvin raised his second point in his *pro se* supplemental brief in his direct appeal.  The Appellate Division in affirming Colvin's conviction did not separately address the ineffective assistance of counsel claim in its opinion.  Instead, the Appellate Division held:  "We have considered the contentions raised in defendant's pro se supplemental brief and conclude that they are without merit."  The ineffective assistance of counsel issue was not included in Colvin's application for leave to appeal filed in the New York Court of Appeals.

Respondent contends that Colvin's claim is unexhausted and procedurally barred.  The Court agrees that this ground is unexhausted and procedurally barred.

"A petitioner satisfies the fair presentation aspect of the exhaustion requirement by presenting the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it."[15]  In New York, to invoke one complete round of the State's established appellate process, a criminal defendant must first appeal his or her conviction to the Appellate Division and then seek further review by applying to the Court of Appeals for leave to appeal.[16]  Claims are fairly presented to the New York Court of Appeals when the application for leave to appeal clearly states that all claims in the attached brief are being pressed or no arguments are made in detail but simply requests review of all issues outlined in the brief.[17]  Where the application for leave to appeal refers to specific claims raised before the Appellate Division but omits mention of others, the unmentioned claims are deemed abandoned.[18]  Where the application for leave to appeal argues one or more specific claims but only makes a passing

---

[15] *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005).

[16] *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005).

[17] *Jordan v. Lefevre*, 206 F.3d 196, 199 (2d Cir. 2000); *see also Morgan v. Bennett*, 204 F.3d 360, 369–90 (2d Cir. 2000) (the application for leave to appeal did not specify any particular issue for review, but enclosed the briefs filed in the Appellate Division and requested the Court of Appeals consider and review all issues raised in the appellant's brief and *pro se* supplemental brief).

[18] *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991).

reference to possible other claims found in the attached briefs, the claims mentioned in passing have not been fairly presented to the Court of Appeals.[19]

By failing to include the ineffective assistance of counsel issue raised in his *pro se* supplemental brief before the Appellate Division (failure to investigate) in his application for leave to appeal to the New York Court of Appeals, Colvin has failed to exhaust that claim.[20] Colvin has not raised the first (specific reasons for the police making an identification request) and third (empaneling a juror who knew the district attorney) in any proceeding before the New York courts.  Thus, those claims are clearly unexhausted.

Respondent also argues that Colvin's ineffective trial counsel claim is procedurally barred.  Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."[21]  This Court may not reach the merits of procedurally defaulted claims, that is, claims "in which the petitioner failed to follow applicable state procedural rules in raising the claims . . . ."[22]

Colvin has already had his one and only direct appeal permitted under New York law.[23] Colvin raised the second point on direct appeal.  The record shows that the first and third points were clearly reviewable on direct appeal; thus, Petitioner would be precluded from raising them in a  N.Y. Criminal Procedure Law § 440.10 motion by § 440.10(2)(c) (barring review of a claim that could have presented on direct appeal).[24]  CPL § 440.10(2), a default procedural rule established by statute, is an independent and adequate state ground precluding review by this Court.[25]  Since Colvin no longer has any remedy available, these claims are deemed exhausted

---

[19] *Jordan*, 206 F.3d at 198.

[20] *See Grey,* 933 F.2d at 120.

[21] *Coleman v. Thompson,* 501 U.S. 722, 729 (1991).

[22] *Sawyer v. Whitley,* 505 U.S. 333, 338, (1992).

[23] *See Aparicio v. Artuz*, 269 F.3d 78, 91 (2d Cir. 2001).

[24] *Id.*

[25] *Sweet v. Bennett*, 353 F.3d 135, 141 (2d Cir. 2003).

and procedurally barred from review in a federal habeas proceeding.[26]  To avoid this bar, Colvin must demonstrate cause for the default and actual prejudice, or that the failure to consider the claims will result in a fundamental miscarriage of justice.[27]  Colvin has failed to show such a miscarriage.

Colvin's ineffective assistance of trial counsel claim is unexhausted and procedurally barred.  Colvin is not entitled to relief under his first ground.

Ground 2:  Ineffective Assistance of Appellate Counsel.

Colvin argues that appellate counsel was ineffective for failing to include in the application for leave to appeal filed with the New York Court of Appeals the ineffective trial counsel claim raised in his *pro se* supplemental brief filed with the Appellate Division.

Under *Strickland v. Washington*, to demonstrate ineffective assistance of counsel, Petitioner must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[28]  A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.[29]  Petitioner must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.[30]  *Strickland* and its progeny do not mandate this court act as a "Monday morning quarterback" in reviewing tactical decisions.  Indeed, the Supreme Court admonished in *Strickland*:[31]

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires

---

[26] *See Coleman*, 501 U.S. at 731–32.

[27] *Id.*, 501 U.S. at 750.

[28] 466 U.S. 668, 687 (1984).

[29] *Id.*

[30] *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

[31] 466 U.S. at 689 (internal citations and quotation marks omitted).

that every effort be made to eliminate the distorting effects of hindsight, to
reconstruct the circumstances of counsel's challenged conduct, and to evaluate the
conduct from counsel's perspective at the time.  Because of the difficulties
inherent in making the evaluation, a court must indulge a strong presumption that
counsel's conduct falls within the wide range of reasonable professional
assistance; that is, the defendant must overcome the presumption that, under the
circumstances, the challenged action might be considered sound trial strategy.
There are countless ways to provide effective assistance in any given case.  Even
the best criminal defense attorneys would not defend a particular client in the
same way.

The failure of appellate counsel to raise meritless or weak issues does not constitute
ineffective assistance of counsel.[32]  "However, a petitioner may establish constitutionally
inadequate performance if he shows that counsel omitted significant and obvious issues while
pursuing issues that were clearly and significantly weaker."[33]  The critical issue is whether Colvin
suffered any prejudice as a result of appellate counsel's omission.  That is, is there any
reasonable probability that, had appellate counsel included the ineffective trial counsel claim in
his application for leave to appeal, the New York Court of Appeals would  have (1) granted leave
to appeal on that issue and (2) ruled in favor of Colvin on that issue?  Because Colvin's
entitlement to relief on this ground is dependent upon the merits of his first ground to the extent
that he raised the ineffective assistance of trial counsel before the Appellate Division, the Court
must nonetheless assess the merits of the claim.

The standard applied in New York in analyzing ineffective assistance of counsel claims
is, as set forth in *People v. Benevento*, a flexible one, "so long as the evidence, the law, and the
circumstances of a particular case, viewed in totality and as of the time of the representation,
reveal that the attorney provided meaningful representation, the constitutional requirement will
have been met"[34]  The core of the New York test is whether the defendant received "meaningful

---

[32] *See Jones v. Barnes*, 463 U.S. 745, 751–52 (1983) (holding that appellate counsel does not
have an obligation to raise every nonfrivolous argument); *Apracio v. Artuz*, 269 F.3d at 99 (holding that
its not ineffective counsel to fail to raise meritless claims).

[33] *Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir. 2000), quoting *Mayo v. Henderson*, 13 F.3d 528,
533 (2d Cir. 1994).

[34] 697 N.E.2d 584, 587 (N.Y. 1998) (internal alterations, quotation marks and citation omitted).

representation."[35]  As in *Strickland*, "counsel's efforts should not be second guessed with the clarity of hindsight to determine how the defense might have been more effective."[36]

The first problem the Court faces is that, other than Colvin's conclusory statement that trial counsel "failed to properly conduct an investigation of the crime scene in order to controvert the people's witnesses account's regarding there (*sic*) testimony given at trial," there is no evidence in the record as to the extent of the investigation, if any, conducted by trial counsel.  For the most part, Colvin's arguments before this Court revolve around the inconsistencies and contradictions in the testimony identifying Colvin as the perpetrator, inconsistencies and contradictions that were resolved by the jury unfavorably to Colvin.  In his supplemental brief filed on direct appeal, Jackson refers only to the testimony of Lewis Edgecombe.  Specifically, Colvin argued:

> According to statements made by Lewis Edgecombe the person responsible for shooting Ronald Jackson was standing at the back of the car and shooting a weapon at Mr. Jackson, Mr. Edgecombe, alleged during trial, that he could clearly see the assailant firing the weapon, and that he could see flames coming from the barrel of the weapon.

> * * * *

> Counsel for the defendant conducted no investigation prior to trial and failed to hire an investigator to canvass the area in search of potential witnesses, had trial counsel investigated the scene of the crime, he would have found that it was physically impossible for Lewis Edgecombe to have witnesses [*sic*] what he claims were sparks coming from the barrel of the weapon.  Clearly, counsel was obligated to have an investigator go over the crime scene, obtain photo's [*sic*], and canvass the area for potential witnesses.

A review of the record shows that Colvin was identified at trial as the perpetrator of the crime principally through the testimony of Lewis Edgecombe, Samantha Horn, and Michael Harris.  Both Edgecomb and Horn were passengers in the car with Colvin and Jackson (the victim) immediately prior to the shooting but had departed the immediate area of the shooting prior to the time Jackson was shot.  Both were acquainted with Jackson.  Although they did not

---

[35] *Id.*

[36] *Id.*

know him at the time of the crime, both also identified Colvin at the trial as the driver of the car. Horn and Edgecombe exited the car before the shooting and walked down the street away from the scene. Horn testified that she did not see the shooting. Edgecombe testified on direct examination that he looked back, saw Colvin pointing a black object at Jackson, heard shots, saw flashes and Jackson go down. On cross examination, trial counsel asked Edgecombe:

> Q.    Well, maybe we are closer to the truth, Mr. Edgecombe, are we not, that when you got out of that car in front of Park Avenue, you walked down Park and you took that left onto Eagle, and you were around the corner and you never saw anything, all you did is hear things isn't that the truth Mr. Edgecombe?
>
> A.    No, it isn't.
>
> Q.    And you felt in your mind you really didn't have any eyewitness testimony to give to the police; isn't that the truth?
>
> A.    No
>
> Q.    So if someone were to say that they saw you on Eagle Street around the corner at the time that the shots rang out, they wouldn't be telling the truth, right?
>
> A.    Can you repeat that again?
>
> Q.    If someone were to say that they saw you on Eagle Street at the time the shots rang out, they would not be telling the truth?
>
> A.    That's impossible.
>
> Q.    Because if you were around the corner on Eagle Street, it would be impossible to see anything that was happening over there by the car; isn't that correct?
>
> A.    If I was on Eagle Street, but I wasn't. I was on Park Ave.
>
> Q.    No. I am asking you, if you were on Eagle Street, it would be impossible to see what was going on over there by that car?
>
> A.    It would be.
>
> *    *    *    *
>
> Q.    And when you heard the shots when you were over on Eagle Street, it seemed to you that you also saw things that you didn't really see; isn't that correct, Mr. Edgecombe?
>
> A.    No, sir.

Horn's testimony on direct examination on this point was:

MEMORANDUM DECISION
*Colvin v. Rock*, 9:06-cv-00922-JKS                          9

Q.      Okay.  And was that the end of the conversation?

A.      No.  They were going back and forth.  What they were saying, I really don't know.  Mr. Edgecombe and myself decided that's okay, we didn't want a ride.  We would walk.

Q.      Okay. So what happened at that point?

A.      They were still arguing when we got out of the car. We got around the corner, and I heard someone say, "How are you going to do this?"  And then I heard the gunshots.

*   *   *   *

Q.      How many gunshots did you hear, Samantha?

A.      Five.

Q.      And were they delayed, or were they right after each other?

A.      The first two were kind of delayed, and then last three were right together.

Q.      Okay. How long would you say the gunshots took total?

A.      Two minutes, a minute, not very long.  Not very long at all.

Q.      And what were you doing -- Did you turn back and look?

A.      I -- I don't know. I just stood there froze.  I couldn't move.  I wasn't looking anywhere.  I was just -- I was just looking, but I was just standing there.

Q.      When you say you were looking, you were looking in the direction of Park Avenue, or were you looking in the direction of Eagle Street?

A.      Up Eagle Street because when I had heard, I just stopped, you know, and just was looking and listening rather.

Q.      And you never looked back?

A.      No.

Harris, Jackson's stepfather, testified on direct examination that he heard Jackson come in, remove what Harris believed to be drugs from a safe in the apartment and then leave.  Harris went to a window in the apartment overlooking the street.  Harris observed Jackson hand something to someone in the back seat and to the driver.  He then saw two unidentified black persons, one a female, exit from the back of the car and walk away from the vehicle.

Q.      Okay. And when they got out of the vehicle, where did they go?

MEMORANDUM DECISION
*Colvin v. Rock*, 9:06-cv-00922-JKS                    10

A.     They proceeded to walk around the corner onto Eagle Street.

Q.     Okay. So they went down Park Ave.?

A.     They just went up Park Ave. right there and just turned the corner around Eagle.

Q.     So Park Avenue at some point meets up with Eagle Street?

A.     With Eagle, right.

Q.     And that's sort of at a point, isn't it?

A.     Yes.

Q.     And you saw them walk up Park Ave. towards Eagle?

A.     Yes

Q.     And then what did you see?

A.     I saw them turn the corner.  And I proceeded to go to another window on Eagle Street side of my bedroom to see where they were going.  And I seen them start walking real fast, so that made me come back to this window over here on Park Avenue side.

Q.     Okay. So once they rounded the corner from Park Avenue to Eagle, is that when you saw them walking really fast?

A.     Yes

Q.     All right. And they were walking really fast up Eagle Street?

A.     Up Eagle Street.

Q.     And away from Park Avenue?

A.     Right

Q.     And but you moved to another window in your apartment to view that; is that correct?

A.     Yes. Yes.

Q.     And where was that window located?

A.     It's like three feet from the other window.

Q.     And it's also in your bedroom?

A.     In my bedroom, yeah.

Q.     Approximately how many windows are in your bedroom, Mr. Harris?

A.     Six.

Q.     So the fact that they were walking really fast away from 1151 Park Avenue, is that what caused you to go back to the other window?

A.     Yes

At that point, Harris returned to his first window, facing Park Avenue, and saw that Jackson was walking back towards the porch leading into the apartment building.  Harris then saw the driver, who was standing next to the driver's side of his car, look down at the ground, run around the back of the car towards the porch, pull a gun from the back of his waist, and start shooting towards the porch where Jackson had been walking.  Although Harris could not see any fire coming from the gun, he heard five to six shots "[o]ne right after the other."  Harris did not actually see Jackson being shot because he had lost sight of Jackson when Jackson had walked closer to the porch.  During both his direct examination and cross-examination Harris was shown pictures of the scene, including pictures of the building and pictures taken from the window in Harris's apartment.

In his closing summation, trial counsel argued quite forcefully that, based upon the direct testimony of Horn and Harris, as well as Edgecombe's own testimony on cross, Edgecombe could not have seen the shooting.  The record itself not only does not support Colvin's claim that trial counsel did not do an adequate investigation—it destroys it.  Even assuming that counsel did not visit the scene, what else he might have learned had he done so is a complete mystery.  Counsel argued the very point that Colvin implied he missed—that from where he was Edgecombe could not have seen what he claimed to have seen.

By any reasonable objective standard, Colvin has not established that trial counsel was ineffective.  Colvin has failed to show that trial counsel committed any error that was so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment or that his defense was prejudiced, as required by *Strickland-Hill*, or that he did not receive meaningful representation as required by *Benevento*.

There is simply no reasonable probability that the New York Court of Appeals, applying *Benevento*, would have granted leave to appeal in the first instance or, assuming it did grant leave, would have decided the issue in favor of Colvin in the second instance.  Consequently,

Colvin has failed to establish that appellate counsel committed any error that was so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment, or that defendant's defense was prejudiced, as required by *Strickland-Hill*.  In particular, Colvin has failed to establish prejudice, *i.e.*, that the result would have been different.

Colvin is not entitled to relief under his second ground

### V.  CONCLUSION and ORDER

Clark is not entitled to relief under the ground raised in the petition.  Accordingly,

**IT IS ORDERED THAT** the Petition for a writ of habeas corpus under 28 U.S.C. § 2254 is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[37]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  *See* Fed. R. App. P. 22(b); Second Circuit R. 22.

The Clerk of the Court to enter final judgment accordingly.

Dated:  February 10, 2009.

/s/ James K. Singleton, Jr.<br>JAMES K. SINGLETON, JR.<br>United States District Judge

---

[37] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," *i.e.,* when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks and citations omitted).

MEMORANDUM DECISION
*Colvin v. Rock*, 9:06-cv-00922-JKS